# KNOX COUNTY *v.* NINTH NATIONAL BANK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 78. Argued December 2, 5, 1892. — Decided January 3, 1893.

The question under what statute of Missouri the bonds were issued which form the subject of this controversy was properly determinable in a suit on the bonds.

An order of court, directing a notice of an election which was to take place in thirty-four days to be given by publication in a designated newspaper for five weeks, must be construed to mean a publication in each of the five weeks.

Where an act is done which can be done legally only after the performance of some prior act, proof of the later carries with it a presumption of the due performance of the prior act.

Decisions of state courts upon the requirements of state statutes for validating issues of municipal bonds in the State, when made subsequent to an issue of such bonds, are not controlling in litigations in Federal courts, involving the validity of such issue.

When the matter in dispute is whether a particular issue of municipal bonds was made under one statute of the State in which the municipality is situated or under another, the whole conduct of the municipality, both before, at the time and after the issue of the bonds, may be shown to aid in determining the question.

In a subscription by a municipal corporation to aid in the construction of a railroad, it is sufficient if the route is designated, leaving to the municipal authorities to designate the particular corporation to be the recipient of the subscription.

The bonds issued by Knox County, Missouri, to the Missouri and Mississippi Railroad Company, were issued in pursuance of the general laws of the State, and not under the act of the legislature of Missouri, of February 20, 1865, to incorporate that company, and the county powers of taxation are not limited by the provisions of section 13 of the act incorporating the company.

On February 20, 1865, the legislature of the State of Missouri passed an act to incorporate the Missouri and Mississippi Railroad Company. (Session Acts 1865, p. 86.) Section 7, prescribing the route of said road, reads:

"Sec. 7. Said board of directors shall have full power and

authority . .arvey, mark out, locate and construct a railroad from the town of Macon, in the county of Macon, in the State of Missouri, through the town of Edina, in the county of Knox, in said State, and thence to or near the northeast corner of said State, in the direction of Keokuk, in Iowa, or Alexandria, Missouri."

By section 13 it was provided:

"SEC. 13. It shall be lawful for the corporate authorities of any city or town, the county court of any county desiring so to do, to subscribe to the capital stock of said company and may issue bonds therefor and levy a tax to pay the same, not to exceed one-twentieth of one per cent upon assessed value of taxable property for each year."

Chapter 63 of the General Statutes of Missouri of 1866, is a general statute in reference to railroad companies. Section 17 of that chapter is as follows:

"SEC. 17. It shall be lawful for the county court of any county, the council of any city or the trustees of any incorporated town, to take stock for such county, city or town in or loan the credit thereof, to any railroad company duly organized under this or any other law of the State: *Provided*, that two-thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein, shall assent to such subscription." Gen. Stats. of Missouri, 1866, page 338 ; 1 Wagner's Stats. 1870, page 305.

On October 1, 1867, and on February 1, 1868, the county of Knox issued $100,000 in ten-year bonds to the Missouri and Mississippi Railroad Company. The body of the bond is in these words:

"Know all men by these presents: The county of Knox, State of Missouri, acknowledges itself indebted to the Missouri and Mississippi Railroad Company, (organized by an act of the general assembly of the State of Missouri,) or bearer, in the sum of $500.00 which said sum the said county promises to pay at the National Bank of Commerce, in the city of New York, . . . with interest at 7 per cent per annum, which interest shall be payable annually on presentation of the coupon hereto annexed at said National Bank of Commerce,

in the city of New York, this bond being issued under and pursuant to order of the county court of Knox County for subscription to the stock of the Missouri and Mississippi Railroad Company as authorized by an act of the general assembly of the State of Missouri, entitled 'An act to incorporate the Missouri and Mississippi Railroad Company,' approved February 20, 1865."

On June 14, 1884, the defendant in error claiming to be the owner of certain of these bonds, brought suit in the Circuit Court of the United States for the Eastern District of Missouri. In the petition it was alleged that "all of said bonds and coupons were authorized, issued and negotiated by said defendant county under and by authority of orders of the county court of said county, duly entered on the records of said court, and under and by the authority of a special election of the qualified voters of said Knox County, duly ordered and held, under and according to the laws of Missouri, in said county on the 12th day of March, 1867, at which election five hundred and ten votes were duly and legally cast in favor of making the subscription to the said company and of issuing therefor the bonds herein described, and only ninety-eight votes were cast against the said subscription and issue of bonds." The answer admitted the issue of the bonds, but alleged that they were issued under the authority conferred upon the County Court of Knox County by the thirteenth section of the act incorporating the Missouri and Mississippi Railroad Company, and expressly denied that they were "issued to said Missouri and Mississippi Railroad Company in payment of said subscription in compliance with a vote of the people of said county, as alleged in said petition." Upon these pleadings the case went to trial before a jury which resulted in a verdict and judgment on March 7, 1888, in favor of the plaintiff for the amount due on the bonds, and coupons and an adjudication " that the bonds and coupons sued upon by plaintiff were duly issued by the defendant county under and by authority of [*an*] order of the county court for that purpose and under and by authority of a special election of the qualified voters of said county duly ordered and held in said county for that purpose, at which

more than two-thirds of such qualified voters voting at said election voted for the subscription of stock and issue of said bonds and coupons, as charged in plaintiff's petition; and further, said bonds and coupons, together with the subscription aforesaid, were duly authorized by a vote of the qualified voters of said county, taken according to the laws of the State of Missouri." To reverse which judgment the county sued out this writ of error.

*Mr. B. R. Dysart,* (with whom was *Mr. R. G. Mitchell* on the brief,) for plaintiff in error.

*Mr. J. B. Henderson* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

No question arises in this case as to the amount of the judgment, or as to the validity of the bonds as obligations of Knox County. The answer in terms admitted the indebtedness, and the only question which was litigated was whether the bonds were issued solely under and by virtue of section 13 of the act incorporating the Missouri and Mississippi Railroad Company, or were supported by a vote of the people under the general railroad law. The difference between the two consists in this: If the bonds were issued under the general statute and in pursuance of the vote of the people, they are payable without restriction as they fall due, and mandamus will lie to compel a levy sufficient to pay the judgment; if issued only under section 13 of the Missouri and Mississippi Railroad Company act, a special levy of not exceeding one-twentieth of one per cent of the assessed valuation for each year is all that can be enforced. *United States* v. *County of Macon,* 99 U. S. 582.

That this was a matter properly determinable in a suit on the bonds, and one to be finally settled by the judgment therein, is clear from the case of *Harshman* v. *Knox County,* 122 U. S. 306.

While the bonds on their face recite that they are "issued under and pursuant to order of the county court of Knox

County, for subscription to the stock of the Missouri and Mississippi Railroad Company, as authorized by an act of the general assembly of the State of Missouri, entitled 'An act to incorporate the Missouri and Mississippi Railroad Company,' approved February 20, 1865," and while such a recital may be invoked by the holder of the bonds as an estoppel against the county, it is not conclusive in its favor as to the act under which the bonds were in fact issued. *Commissioners v. January,* 94 U. S. 202. The questions, therefore, to be considered are those which arise in respect to the admission of testimony, its sufficiency, and the instructions of the court. In reference to the former, it may be remarked that several witnesses were called, among them two who were county judges at the time the bonds were issued; that all were asked as to the talk which took place at the time the bonds were issued, and the county judges, as to which act they relied upon in the issue of the bonds, and what they thought and intended in the matter. It is unnecessary to express an opinion as to the competency of this testimony, for no exceptions were taken to that which was offered by the plaintiff, and of course the defendant cannot allege error in the admission of that which it offered.

The record evidence consisted, among other things, of these matters: An order of the county court of Knox County, on February 6, 1867, upon a petition therefor, directing a special election to be held on the question of subscribing $100,000 to the stock of a railroad company constructing a road through Knox County, (no particular company was mentioned in the order, and three different lines of road were described, one of them similar to that named in the charter of the Missouri and Mississippi Railroad Company;) a record of the canvass of the votes at such election, showing 510 votes for and 98 votes against the subscription; and an order of the county court of May 13, 1867, authorizing the presiding justice of the court to subscribe in the name of the county of Knox for a hundred thousand dollars of the capital stock of the Missouri and Mississippi Railroad Company. The terms of this subscription, as prescribed in this order, were the same as those in the order for an election, to wit, that the bonds should be used for work

actually done on the road within the limits of Knox County. The plaintiff also introduced the orders of the county court with respect to the levy of taxes to pay the interest on these bonds for the years from 1868 to 1875, inclusive, which ranged from thirty to seventy-five cents on the hundred dollars, until the year 1875, when it was only five cents, or one-twentieth of one per cent. It was admitted that in May, 1874, a decision of the Supreme Court of the State of Missouri was announced, *State* v. *Shortridge*, 56 Missouri, 126, by which the power of county courts to levy taxes for the payment of bonds issued to the Missouri and Mississippi Railroad Company was limited to one-twentieth of one per cent, as prescribed in section 13 of its charter, and that the order made by the county court of Knox County, on the 23d of April of that year, levying seventy-five cents on the hundred dollars, was on the 1st day of June set aside, and a levy of five cents ordered. There was also offered in evidence a certified copy of certain leaves of the bond register of Knox County, showing a statement of the bonded debt outstanding January 1, 1874, on which is a minute that $100,000 of the bonds issued to the Missouri and Mississippi Railroad Company were "ordered by an election held 12th of March, 1867;" also a statement of the financial condition of the county published in a county newspaper by order of the county court, in which was a substantially similar statement.

Upon this we notice two or three of the principal points made by counsel for plaintiff in error: The order for the election directed that notice thereof "be given through the *Missouri Watchman*, for five weeks, and by printed handbills publicly exposed throughout the county." It also named the second Monday in March as the day for the election. No evidence was offered of any printed handbills, or of the publication of notice in the *Missouri Watchman*. It is insisted that in the absence of evidence there can be no presumption that notice was given either by handbills or in the newspaper; and, secondly, that between the date of the order, February 6, and the date of the election, March 12, it was not possible to make the prescribed publication, because, excluding the day of the order

and including the day of the election, there would be only thirty-four days, or one day lacking the five full weeks. The statutes of Missouri, at that time in force, provided, in accordance with the general rule in respect to such matters, that "the time within which an act is to be done shall be computed by excluding the first day and including the last." Gen. Stats. Missouri, 1866, p. 84, § 6. But the notice required for this election was not prescribed by statute. It was fixed by order of the county court, and there being but thirty-four days between the day of the order and that named for the election, it must be presumed that what was intended was not a publication for five full weeks of seven days each, but a publication in each of the five weeks, which could easily be made in the thirty-four days. It cannot be supposed that the county court directed a notice which it was impossible to give, or that it was putting the people to the annoyance and the county to the expense of an election which was necessarily void by reason of an inability to comply with the terms of the order. The order must be construed so as to make possible a valid election, and that is accomplished by construing it, and in a reasonable way, as requiring advertisement in five successive weekly issues of the paper named.

Again, the election was held, the votes cast at that election were canvassed by the proper officers, and an order made by the county court for a subscription in accordance with the terms of the order for the election. From these facts it may be presumed that proper notices of the election were given; for it is a rule of very general application, that where an act is done which can be done legally only after the performance of some prior act, proof of the later carries with it a presumption of the due performance of the prior act. In *Bank of the United States v. Dandridge*, 12 Wheat. 64, 70, it was said: "The same presumptions are, we think, applicable to corporations. Persons acting publicly as officers of the corporation are to be presumed rightfully in office; acts done by the corporation which presuppose the existence of other acts to make them legally operative are presumptive proofs of the latter. . . . If officers of the corporation openly exercise a power

which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed. . . . In short, we think that the acts of artificial persons afford the same presumptions as the acts of natural persons. Each affords presumptions, from acts done, of what must have preceded them, as matters of right or matters of duty."

But further, the validity of the bonds is admitted by the answer, and, therefore, it is unnecessary to prove every separate step which otherwise might be required in order to show the legality of this issue. The inquiry here is, under what act and by what authority the county court issued them; and in determining that question, any statement on the records of the county may be competent evidence, and from all the acts and circumstances it is to be determined under which act the county was proceeding. Suppose the bonds contained no recitals, but simply an acknowledgment of indebtedness, and in a suit on them their validity was admitted, and there were two statutes, under either of which the bonds might have been issued, a single entry on the records of the county might be sufficient, in the absence of all other testimony, to support a finding that the bonds were issued under one rather than the other statute. All that can be said from the omission to introduce in evidence a full recital of all the steps necessary to make a perfect proceeding under the general statute is; that such omission detracts from the force of the testimony from the records and proceedings actually produced. In this respect it will be noticed that there is a marked difference between an omission to prove one step in a prescribed course of proceeding, and evidence that such step was not taken, for if it were established that one essential step in a course of proceeding required by one statute was not taken, it might well be held that the bonds admitted to be valid were in fact issued under the other statute.

This brings us to notice a point made in reference to the instructions: There was testimony tending to prove that a

registration had been made of the qualified voters of the county, and that it showed over 1000 such voters. The vote cast at the election was, for the subscription, 510, and against, 98; that is, more than two-thirds of those who actually voted assented to the subscription; but not two-thirds of the qualified voters, as shown by the registration. Several decisions of the Supreme Court of Missouri are cited, the latest being that of *State* v. *Harris*, 96 Missouri 29, in which that court has held that two-thirds of those actually voting is not sufficient; and that it must appear that two-thirds of the qualified voters, as ascertained by the registration, assented to the subscription, and it is said that this court follows the settled construction placed upon its statutes by the Supreme Court of a State. This question has been thoroughly discussed in this court, and it is unnecessary to enter into any reëxamination of it. These decisions were made after the issue of the bonds, and cannot be deemed controlling. *Cass County* v. *Johnston*, 95 U. S. 360; *Daviess County* v. *Huidekoper*, 98 U. S. 98; *Douglass* v. *Pike County*, 101 U. S. 677; *Carroll County* v. *Smith*, 111 U. S. 556.

Another matter is this: It will be remembered that the court permitted the plaintiff to offer in evidence the tax levies for several years after the issue of the bonds; a copy of the entries made on the bond register of the county in 1874, showing the bonded indebtedness of the county; and a financial statement of the county, published by direction of the county court. It also instructed the jury that they might consider these matters in determining what was the intent of the county court in issuing the bonds, "that is to say, whether they intended to act exclusively under the railroad charter, or under authority conferred by a popular vote, or under both powers." It was not said by the court that these matters created an estoppel upon the county, or concluded it as to the question, but simply that they were matters to be considered. It is a familiar rule that the interpretation given to a contract by the parties themselves is competent, and oftentimes very weighty, evidence in determining its meaning and force. So in a matter of this kind, the whole conduct of the county, both before,

at the time, and after the issue of the bonds, may be shown to aid in determining under what statute and by what authority the county proceeded in the issue of these bonds. *Chicago* v. *Sheldon*, 9 Wall. 50, 54; *Steinbach* v. *Stewart*, 11 Wall. 566, 576; *Canal Company* v. *Hill*, 15 Wall. 94; *Merriam* v. *United States*, 107 U. S. 437; *United States* v. *Gibbons*, 109 U. S. 200.

Again, it is urged that the order for the election was invalid, inasmuch as no corporation was named as the proposed recipient of the subscription, but it has been held to the contrary, and that it is sufficient if the route is designated, leaving to the county authorities the selection of the particular corporation to be the recipient of the subscription. *Commissioners* v. *Thayer*, 94 U. S. 631; *Scipio* v. *Wright*, 101 U. S. 665.

Another matter requires notice, and it is of great significance: The constitution of the State of Missouri, adopted July 4, 1865, article II, section 14, provided that " the general assembly shall not authorize any county, city or town to become a stockholder in or to loan its credit to any company, association or corporation unless two-thirds of the qualified voters of such county, city or town, at a regular or special election, to be held therein, shall assent thereto." At the October term, 1867, of the Supreme Court of Missouri, the case of *State* v. *Macon County Court*, 41 Missouri, 453, was decided, in which it was held that the constitution had no retroactive effect upon statutes passed before its adoption, and that, therefore, under the Missouri and Mississippi Railroad Company act, passed February 20, 1865, a few months before the adoption of the constitution, there was power in the county authorities to subscribe without the assent of the voters. It may well be believed as asserted by counsel for defendant in error, that, until that decision was announced, the understanding that the prohibition in the constitution superseded all unexecuted authority given by prior charters was so general, that no county court would have dared to subscribe stock and issue bonds without the assent of two-thirds of the qualified voters. This subscription was made, some of the bonds issued, as well as the vote held, before the decision in the Macon County case, and it is difficult to believe that the county court did not issue

these bonds in reliance upon the authority given them by the vote of the people, in pursuance of the general laws of the State, although referring on the face of. the bonds to the Missouri and Mississippi Railroad Company act, which specially authorized the company to receive and the counties through which it ran to make subscriptions. It is very likely that the county court had in mind the special act creating the Missouri and Mississippi Railroad Company, as well as the general law, and the vote of the people under it, and that it meant to exercise all the authority conferred by both. It is enough for this case that the vote of the people authorizing this issue of bonds was given, and that the county court acted in reliance thereon, for, by assent, through their vote, to such issue of bonds the people, in the way prescribed by the statutes of the State, in effect consented that a levy beyond the meagre one provided for by the Missouri and Mississippi Railroad Company act might be resorted to for the payment of these bonds.

These are the substantial matters involved in this litigation. We find no error in the proceedings of the Circuit Court, and its judgment is

*Affirmed.*