## UNITED STATES v. DAVENPORT et al.

(District Court, W. D. Texas, Del Rio Division. June 5, 1920.)

No. 11.

**1. Courts ⬞337—Scire facias on bond governed by rules of civil procedure of the state.**

A bail bond is a contract between the sureties and the government, and an action to enforce it is a civil action, in which the law is not required to be construed strictly, as in a criminal proceeding, and the sufficiency of the procedure is to be determined by the laws of the state.

**2. Bail ⬞84—Defenses to scire facias on bond limited by statute.**

Under Vernon's Ann. Code Cr. Proc. Tex. 1916, art. 500, enumerating defenses which may be made to scire facias on a bail bond, which governs in the federal courts in that state, that the principal defendant is innocent, or the indictment defective, or barred by limitation, is no defense.

**3. Bail ⬞58—General description of offense on bond sufficient.**

A bail bond or recognizance before a United States commissioner need only describe the offense charged with sufficient particularity to identify the case and to inform the principal and sureties of the obligation to be assumed.

**4. Bail ⬞58—In scire facias on bond, general description of offense charged sufficient; "recognizance."**

A "recognizance" in a criminal case is a judgment confessed of record, and a proceeding by scire facias after forfeiture is merely to confirm such judgment and the prior proceedings, and the charge against the principal need be described only sufficiently to identify the case.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Recognizance.]

**5. Bail ⬞58—Statement of offense charged sufficient.**

A recital in a recognizance and judgment of forfeiture thereon that the principal was charged with having embezzled funds of a national bank, of which he was cashier, in violation of Rev. St. § 5209 (Comp. St. § 9772), *held* to show that a criminal offense was charged under the statute: for, although said section, as amended by Act Sept. 26, 1918, § 7 (Comp. St. Ann. Supp. 1919, § 9772), deals only with "any officer * * * of any federal reserve bank or of any member bank," every national bank was required by the Federal Reserve Act to become a member of the reserve bank for its district.

**6. Embezzlement ⬞4—Elements of offense.**

The word "embezzle" has a technical significance, and conveys the idea of wrongful appropriation of the property of another by one intrusted with it, or who has possession of it under some trust duty or office, and the word of itself implies a fraudulent and unlawful intention on the part of the person charged (citing Words and Phrases, Embezzle—Embezzlement.)

Scire facias by the United States against J. C. Davenport and others. On exceptions to writ. Overruled.

Hugh R. Robertson, U. S. Dist. Atty., of San Antonio, Tex.

Levy Old and W. D. Love, both of Uvalde, Tex., for defendants.

WEST, District Judge. This suit is based upon the bail bond of F. J. Rheiner, principal, together with record forfeiture appearing by a judgment nisi entered March 20, A. D. 1919, in the criminal case. Rheiner's sureties, defendants in this scire facias proceedings, respond to the writs issued. By general and special exceptions they question

the legal sufficiency of the bond and judgment. To properly estimate the force of these exceptions it seems necessary to insert in full a copy of the bond and of the record of judgment nisi. The first day of the March term, A. D. 1919, of the court was March 17th. It will be noted that the judgment of forfeiture was taken on March 20, 1919, a day of the regular term; the grand jury having returned an indictment against the principal, Rheiner, and the case formally docketed. The bail bond and judgment nisi are as follows:

### The Bond.

"United States of America, Western District of Texas, Del Rio Division.

"Be it remembered, that on this 1st day of February, A. D. 1919, before me, C. W. Hartup, a United States commissioner for the Western district of Texas, Del Rio division, personally came F. J. Rheiner, principal, and J. C. Davenport, F. N. Davenport, B. M. Davenport, and T. J. Martin, sureties, and jointly and severally acknowledged themselves to owe the United States of America the sum of seven thousand and five hundred ($7,500) dollars, to be levied on their goods and chattels, land and tenements, if default be made in the condition following, to wit:

"The condition of this recognizance is such that, if the said F. J. Rheiner, principal, shall personally appear before the District Court of the United States in and for the Western District of Texas, on the first day of the March term, 1919, to be begun and held at the city of Del Rio, Texas, at 9 o'clock a. m., and from time to time thereafter to which the case may be continued, and then and there answer the charge of having, on or about the 7th day of December, A. D. 1918, within said district, in violation of section 5209 of the Revised Statutes of the United States, unlawfully, willfully, and fraudulently made false entries in the books of the Uvalde National Bank, of which said bank he, the said F. J. Rheiner, was then and there cashier, said bank being an association incorporated and operating under and by virtue of the national banking laws of the United States of America; and it is further alleged that the accused did forge the names of certain depositors of said bank, and otherwise did misapply and embezzle the moneys, funds, and credits of the aforesaid bank, and then and there abide the judgment of the said court, and not depart without leave thereof, then this recognizance to be void; otherwise, to remain in full force and virtue. [Signed] F. J. Rheiner. J. C. Davenport. F. N. Davenport. B. M. Davenport. T. J. Martin.

"Taken and acknowledged before me on the day and year first above written. C. W. Hartup, United States Commissioner as Aforesaid. [Seal.]"

### The Judgment Nisi.

"The United States v. F. J. Rheiner, Principal, and J. C. Davenport, F. N. Davenport, B. M. Davenport, and T. J. Martin, Sureties. March 20, 1919. No. 207.

"This day this cause was called for trial, whereupon came the United States, by their district attorney, but the defendant F. J. Rheiner failed to appear, and thereupon his name was three times distinctly called at the door of the courthouse, and a reasonable time given him after such call was made in which to appear, yet the said defendant came not, but wholly made default; and now J. C. Davenport, F. N. Davenport, B. M. Davenport, and T. J. Martin, sureties on the recognizance of said F. J. Rheiner, being also three times called and commanded to bring the body of their principal, the said F. J. Rheiner, came not, but made default.

"And it appearing to the court that the defendant F. J. Rheiner, as principal, together with J. C. Davenport, F. N. Davenport, B. M. Davenport, and T. J. Martin, as sureties, did on, to wit, the 1st day of February, 1919, enter into a recognizance before C. W. Hartup, United States commissioner for the Western district of Texas, at Eagle Pass, Texas, payable to the United States of America, in the penal sum of seven thousand five hundred ($7,500.00) dollars, conditioned that the defendant F. J. Rheiner should make his personal appearance before the District Court of the United States in and for the

Western District of Texas on the first day of the March term, 1919, to be begun and held at the city of Del Rio, Texas, at 9 o'clock a. m., and from time to time thereafter to which the case might be continued, and then and there to answer the charge of having, on or about the 7th day of December, A. D. 1918, within said district, in violation of section 5209 of the Revised Statutes of the United States, unlawfully, willfully, and fraudulently made false entries in the books of the Uvalde National Bank, of which said bank he, the said F. J. Rheiner, was then and there cashier, said bank being an association incorporated and operating under and by virtue of the national banking laws of the United States of America, and of having forged the names of certain depositors of said bank, and otherwise misapplied and embezzled the moneys, funds, and credits of said bank, and then and there abide the judgment of said court, and not depart without leave thereof.

"It is therefore considered by the court that the United States of America is entitled to a forfeiture of said recognizance, and it is ordered, adjudged, and decreed by the court that the United States of America have and recover of and from the said F. J. Rheiner, as principal, the sum of seven thousand five hundred ($7,500.00) dollars, and in like manner that the United States of America do have and recover of and from the said J. C. Davenport, F. N. Davenport, B. M. Davenport and T. J. Martin, as sureties, jointly and severally, the sum of seven thousand five hundred ($7,500.00) dollars, and that this judgment will be made final, unless good cause be shown at the next term of this court why the said defendant F. J. Rheiner did not appear.

"It is further ordered that capias issue for the defaulting defendant, and that scire facias issue to said sureties, and that this cause be and the same is hereby continued." Volume A, p. 528, Minutes.

[1] The exceptions to the sufficiency of the record are as follows: Failure to show (1) that a criminal prosecution was pending against the principal; (2) that an examination by an officer duly authorized to admit to bail had been held; (3) that the principal was bound to appear before said court "to answer the accusation against him"; (4) that there was a finding of probable cause to believe that the defendant principal was guilty of any offense; and (5) that the bond, in requiring the principal to appear and answer a charge of "having violated section 5209 of the Revised Statutes of the United States" (Comp. St. § 9772), does not define any criminal offense.

The objections are more appropriate to testing the sufficiency of an indictment than that of proceedings for recovery of a penalty incurred under a formal contractual obligation to the United States. The issues are measured by the terms of the bond and the recitations of the judgment nisi. There seems no reason for a strict or highly technical construction of law in favor of defendants. This action does not involve the guilt or innocence, conviction or acquittal, of any one. It is not a criminal case. The bail bond is a contract between the sureties and the government. Upon the failure of the principal to appear the sureties become debtors. U. S. v. Sanges, 144 U. S. 310, 12 Sup. Ct. 609, 36 L. Ed. 445; U. S. v. Zarafonitis, 150 Fed. 97, 80 C. C. A. 51, 10 Ann. Cas. 290.

[2] Where an offender has been bailed agreeably to the usual mode of process of the laws of the state where the offense is charged to have been committed, the laws of that state are to be looked to to determine the sufficiency of the procedure taken. Rev. St. U. S. § 1014 (Comp. St. § 1674). The Texas statute provides specific exclusive defensive causes which must exist to avoid final judgment on the scire facias. Article 500, vol. 2, Vernon's Crim. St. 1916. This statute was enacted for the

purpose of confining a surety's defense to a scire facias on a forfeited bail bond or recognizance to one of the reasons enumerated and to prevent any inquiry as to the guilt or innocence of the principal defendant or of the validity or invalidity of the indictment. McCoy v. State, 37 Tex. 219. That the indictment is defective, or the principal defendant innocent, is not a defense, see other Texas cases: Jones v. State, 15 Tex. App. 82; Hester et al. v. State, 15 Tex. App. 418; Martin et al. v. State, 16 Tex. App. 265; Langan v. State, 27 Tex. App. 498, 11 S. W. 521; State v. Cocke, 37 Tex. 155; State v. Rhodius, 37 Tex. 165; State v. Ake et al., 41 Tex. 166 and also the following federal court cases: U. S. v. Reese, Fed. Cas. No. 16,138; U. S. v. Evans (C. C.) 2 Fed. 147; Hardy v. U. S., 71 Fed. 158, 18 C. C. A. 22; U. S. v. Graner (C. C.) 155 Fed. 679.

[3] That the offense charged against the principal defendant is barred by the statute of limitations cannot be interposed by sureties on a recognizance. The undertaking of the sureties was to answer for their principal's appearance. Whether the offenses with which he is charged were barred by lapse of time could only be determined in the prosecution against him. A commissioner of the United States Circuit Court is expressly authorized by statute (Rev. St. U. S. § 1014) to take bail for the appearance for trial before the proper court of one charged with crime against the United States. U. S. v. Dunbar, 83 Fed. 151, 27 C. C. A. 488; U. S. v. Sauer (D. C.) 73 Fed. 671.

The liability incurred by the bail in the recognizance of their principal, Rheiner, is not limited to that which appertains to the use of the word "surety." Ordinarily it implies an obligation to pay a money indebtedness of the principal upon his default. The bail or sureties in a recognizance in a criminal proceeding are obligated to produce the body of their principal before a court having jurisdiction to try the offense at the time, place, etc., set forth in the recognizance or bail bond, as it is indiscriminately termed; failure to do so mulcts the bail in the sums of money specified. Mr. Justice Field, in U. S. v. Reese, 27 Fed. Cas. 749, No. 16,138, supra, speaking to the question of the surrender by sureties of their principal, says:   •

"In the theory of the law [the principal] was in their custody, as jailers of his own choosing, subject to be surrendered at any moment. If they failed to exercise their power over him, they must bear the responsibility attached to the position they voluntarily assumed."

Conforming to the trend of authority quoted, the expression of the United States Circuit Court of Appeals, Seventh Circuit, in U. S. v. Du Faur, 187 Fed. 812, 109 C. C. A. 572, is apt:

"A recognizance is a contract of record, and scire facias is an action on that contract as made. Beyond this the court will not look. No inquiry will be made into antecedent proceedings by the court passing on the scire facias. Indeed, the sureties would be estopped from denying the legality of such proceedings. This follows from the very nature of the contract. It is a court record. It imports verity. Upon production it proves itself. It is not to be disputed. Any other practice would allow the obligor and sureties to decide upon the necessity for an appearance—an impossible view. The obligation imposed by the contract was to appear, and not depart without leave of court, as well as to answer the specific charge. Such a bond would not be discharged by quashing the indictment. Neither can it be avoided by the suggestion

that the statute, under which the charge was made, has been declared unconstitutional." ·

The exceptions demand a strict construction of the allegations in the "complaint" as of right. No such strictness is required in the proceeding before the United States commissioner for commitment or bail. It is said in Southworth v. United States, 151 U. S. 179–184, 14 Sup. Ct. 274, 276 (38 L. Ed. 119):

"It is sufficient, if the complaint is full enough to clearly inform the defendant of the offense with which he is charged. * * * If such proceedings were to be subjected to the rigid rules of criticism, and all the constituent elements of the offense required to be set forth in the affidavit * * * with certainty, the administration of the criminal law would be greatly embarrassed. * * *"

And to the same effect is the language used in Barrera's Sureties v. State, 32 Tex. 644–650.

Describing in a recognizance or bail bond the offense of which the principal is charged is for the purpose of identifying the case and to inform the principal and sureties of the obligations to be assumed. U. S. v. Zarafonitis, 150 Fed. 100, 80 C. C. A. 51, 10 Ann. Cas. 290. The defendants in this (a civil) action are requiring a higher degree of certainty than in a criminal proceeding, where doubts are uniformly resolved in favor of the defendant. To comply would require the plaintiff to plead the evidence. In Hollister v. U. S., 145 Fed. 781, 76 C. C. A. 345, where a demurrer was interposed to the sufficiency of the scire facias proceeding upon a forfeited recognizance, a case in point, it is said:

"There is no doubt of the proposition, contended for by defendants' counsel, that there must have been some criminal charge exhibited against Waugh; that the same must have been pending against him at the time of the forfeiture of the recognizance; that the recognizance must have been made matter of record, etc.; but all such matters are evidential in their character. The record, when offered to prove the case, must disclose them, or the case fails; but to hold that any of them must be averred in detail in the declaration is to hold that plaintiff must plead his evidence, instead of the ultimate facts on which recovery is based. We think the declaration was sufficient as against the general demurrer."

[4] A recognizance in a criminal case is a judgment confessed of record, and a proceeding thereon by scire facias after forfeiture is merely to confirm such judgment. U. S. v. Taylor (D. C.) 157 Fed. 718; Ewing v. U. S., 240 Fed. 241, 153 C. C. A. 167. Enough has been stated to show that the terms of the bail bond and the recitals in the judgment are sufficiently definite to fully apprise defendants of the cause of action which they are called upon to meet. This is so, because there is no suggestion from defendants that they lack information operating to their prejudice.

The foregoing remarks and the rulings in U. S. v. Zarafonitis, 150 Fed. 97, 80 C. C. A. 51, 10 Ann. Cas. 290, dispose of the incidental points against defendants' contentions. It should be noted that the decision by Circuit Judge Pardee of this (Fifth) circuit in the last-named case construing very nearly identical questions in a scire facias

proceeding upon a forfeited bail bond, appealed from Texas, is an authority binding upon this court.

[5] The fifth and sixth special exceptions declare that the court lacks jurisdiction because the bond and judgment nisi fail to show that the principal was charged with having committed any offense against the laws of the United States, and particularly that section 5209 of the Revised Statutes, which the principal is charged to have violated, does not define any criminal offense. It is conceded that such an offense must so appear or the court would be without jurisdiction.

The Texas statute (Laws 1899, p. 111, amending article 321, Sayles'), being article (3) 309 of the Code of Criminal Procedure of.1895 provides that the bail bond will be sufficient, "if the defendant is charged with an offense that is a felony, that it state that he is charged with a felony; if the defendant is charged with a misdemeanor, that it state that he is charged with a misdemeanor." The Court of Criminal Appeals of Texas holds that either this must be done or the specific offense be stated. Anderson v. State, 201 S. W. 994. The grade of the offense not being given, how specific must the offense be stated? The question narrows to whether the language used in describing the offense set out in the bond and judgment does or does not specify an offense against the laws of the United States. This language is as follows:

"* * * Then and there to answer the charge of having, on or about the 7th day of December, A. D. 1918, within said district, in violation of section 5209 of the Revised Statutes, unlawfully, willfully, and fraudulently made false entries in the books of the Uvalde National Bank, of which said bank he, the said F. J. Rheiner, was then and there cashier, said bank being an association incorporated and operating under and by virtue of the national banking laws of the United States of America; and it is further alleged that the accused did forge the names of certain depositors of said bank, and otherwise did misapply and embezzle the moneys, funds, and credits of the aforesaid bank."

This language is separable into four distinct charges against Rheiner, the principal: (1) Making false entries; (2) forging the names of depositors; (3) misapplying and (4) embezzling the bank's moneys, funds, and credits. Note that the date of the commission of these offenses is "on or about December 7, 1918." Prior to the amendment of September 26, 1918, section 5209 formed a part of the national banking laws, and reads, eliminating unnecessary verbiage, as follows:

"Every * * * cashier * * * of any association, who embezzles * * * or willfully misapplies any of the moneys, funds, or credits of the association, * * * or who makes any false entry in any book, * * * of the association with intent, in either case, to injure or defraud the association, * * * shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

The section as quoted was in effect at the time of the passage of the Federal Reserve Act of December 23, 1913 (Comp. St. § 9786), and remained so until September 26, 1918, when section 5209 was amended (see section 9772, U. S. Comp. St. Ann. Supp. 1919, vol. 2, p. 2249) to read, immaterial verbiage excluded, as follows:

"Any officer * * * of any federal reserve bank, or of any member bank as defined in the act of December 23, 1913, known as the Federal Reserve Act, who embezzles * * * or willfully misapplies any of the moneys, funds or

credits of such federal reserve bank or member bank, * * * with intent in any way to injure or defraud such federal reserve bank or member bank, * * * shall be deemed guilty of a misdemeanor, and upon conviction thereof * * * shall be fined not more than $5,000, or shall be imprisoned not more than five years, or both, in the discretion of the court."

The material change made by the amendment is to substitute for the words "national banks" or "association" the words "federal reserve bank" or "member bank," and for the word "cashier" "any officer" is substituted. The penalty was changed.

The defendants assert that the making of the false entries, the embezzlement, and the misapplication of the funds cannot constitute an offense without specifically averring the fraudulent intent; that being an ingredient specifically required by section 5209, originally and as amended, or by charging an offense by name. If any one of the four separable charges covered by the blanket charge made in the bond and judgment is specified to be an offense against the laws of the United States, the complaint would be sufficient. Disregarding, then, all except the offense of embezzlement, and bearing in mind that strictness of construction is not to be applied in suits of this character, it appears that all of the constituent elements of this offense are not required to be set forth. Southworth v. United States, 151 U. S. 179, 14 Sup. Ct. 274, 38 L. Ed. 119; United States v. Zarafonitis, 150 Fed. 97, 80 C. C. A. 51, 10 Ann. Cas. 290; McCoy v. State, 37 Tex. 219, and other Texas cases and federal cases cited supra.

[6] Embezzlement was a crime known to the common law, and was classed as a felony of the same grade as larceny. 4 Bl. Comm. 231; United States v. Cadwallader (D. C.) 59 Fed. 677. The word "embezzle" is constantly used in the Criminal Code of the United States. It has a technical significance, and conveys the idea of wrongful appropriation of the property of another by one intrusted with it, or who has possession of it under some trust duty or office. 3 Words and Phrases, p. 2354. The word "embezzle" of itself implies a fraudulent and unlawful intention on the part of the person charged. No one can "lawfully" or "honestly" embezzle money or other property, and hence the use of the word "embezzle" in an indictment against an employé of the Post Office Department, charging him with embezzling and secreting valuable letters, is sufficient to charge the offense; it is not necessary to allege that the same was done with fraudulent intent. United States v. Atkinson (D. C.) 34 Fed. 316. A fraudulent intent may be presumed from the criminal act done. 1 Bishop's Criminal Procedure, §§ 278–290. The word "embezzle," as used in section 5209, Rev. St., or the words "steal, take, and carry away," as used in the common law, have a technical meaning. They do not, therefore, of themselves, fully set forth every element of the offense charged. United States v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520.

The Texas statute, supra, holds a declaration on a forfeited appearance sufficient if it states that the principal is charged with a felony. Here the principal is charged with having committed an offense by name, to wit, embezzlement, a crime known to the common

law as a felony. Authorities supra. He is specifically charged "that in violation of section 5209 of the Revised Statutes of the United States unlawfully, fraudulently and willfully," etc., which statute, notwithstanding its declaration that the crime defined is a misdemeanor, has been held to be one for which an infamous punishment may be awarded, thereby fixing its grade as that of felony. (In re Claasen, 140 U. S. 200, 11 Sup. Ct. 735, 35 L. Ed. 409; Folsom v. United States, 160 U. S. 121, 16 Sup. Ct. 222, 40 L. Ed. 363; Sheridan v. United States, 236 Fed. 309, 149 C. C. A. 437; also section 335, Penal Code, defining felony (Comp. St. § 10509). So that by the common law, and by force of the very statute referred to, the offense is declared to be a felony.

In these circumstances can it in reason be asserted that the defendant sureties were not informed of the fact that their principal was charged with having committed a felony? The record warrants the conclusion that the requirements of the Texas statute had been substantially complied with in that particular. These authorities hold (1) that in a proceeding of this character it is not necessary to allege all the elements of the offense; (2) that it is not necessary to allege that the funds, moneys, and credits were embezzled "with intent to defraud"; (3) that "embezzlement" is a crime so named at common law of the grade of felony, and so declared by statute, all contrary to defendants' contentions.

Bearing in mind that the date of the alleged offense was December 7, 1918, the defendants contend that national banks, since section 5209 was amended, September 26, 1918, as such have no relation to the offenses denounced by the section 5209, unless connected by some certain allegation that the particular national bank is a member of a federal reserve bank; that this is a jurisdictional fact, essential to give vitality to any action on the part of either the United States commissioner in taking the bond or this court in awarding judgment. A comparison of section 5209 before and after its amendment discloses that its effect was merely to add to its present designation "national bank" that of a member of a "federal reserve bank." This amendment should be considered in connection with the Federal Reserve Act of 1913, and it be remembered that this "crimes" section of the national banking laws remained in effect until late in 1918. The act of 1913 (section 2, par. 6) required all national banking associations, within one year after the passage of the act, to become a member bank of the federal reserve, or its rights, privileges, and franchises "shall be thereby forfeited," so that, if the defendant's position be correct, there were no crimes acts relating to federal reserve or member banks until nearly five years after the passage of the original act.

The broad purpose of the Federal Reserve Act was to incorporate under federal control, as members of federal reserve banks, all national banks, as well as banks other than national banks. By force of the law all national banks, though still national banks, are members of federal reserve banks. National banks cannot exist and continue to operate alone as such within one year after the passage of the Federal Reserve Act of December, 1913, because of the mandate of the statutes. If, therefore, in the month of December, 1918, the records show that

"the Uvalde National Bank was an association incorporated and operating under and by virtue of the national banking laws of the United States of America, and of which the said Rheiner (the principal) was then and there the cashier," the defendants are informed that the Uvalde National Bank, since it is operating at that time, must at that time also be a member of a federal reserve bank. Section 5243, Rev. St. U. S. (Comp. St. § 9835), prohibits the use of the title "national" by any bank not organized under the national currency laws. Section 5154, Rev. St. U. S., as amended by the Federal Reserve Act of December, 1913 (Comp. St. § 9694), provides that banks organized under the general laws of the United States shall have all the rights and powers as those prescribed by the Federal Reserve Act. The record is silent as to when the Uvalde National Bank was organized and incorporated. If subsequent to the Federal Reserve Act, it would by force of the act be a member bank.

The recognized rule of presumption, "where an act * * * done [the Uvalde National Bank is "operating" subsequent to a prohibited date] can only be done legally after the performance of some prior act [becoming a member of a federal reserve bank] proof of the latter ["operating" after prohibition] carries with it the presumption of the due performance of the prior act [becoming a member]." United States Bank v. Dandridge, 12 Wheat. 64, 6 L. Ed. 552; Knox County v. Ninth National Bank, 147 U. S. 91, 13 Sup. Ct. 267, 37 L. Ed. 93. The application of this rule adds nothing to the force of the statute, but warrants a holding that the Uvalde National Bank is a member of a federal reserve bank may be conclusively presumed.

Mr. Justice Van Devanter, in Great Northern Ry. v. United States, 155 Fed. 948, 84 C. C. A. 93, while sitting as a Circuit Judge, citing many authorities, held that where an act is amended "so as to read as follows," as is the case in the amendment of section 5209, or is reenacted with changes, so much of the act amended as is omitted is repealed, thus becoming a substitute for the original, which then ceases to have the force of an independent enactment; but this does not mean that the original is abrogated for all purposes, or that everything in a later statute is to be regarded as if first enacted therein.

It may also be observed that offenses committed prior to the repeal are to be regarded as unaffected by the repeal, and subject to prosecution, unless an express prohibition is included in the reenactment. The government, in its proof of the commission of crime as to dates, is not limited to the exact dates mentioned in the charge, but may within the discretion of the court, and within reasonable limits, introduce evidence of the commission of offenses for a period of time as far back as the bar of the statute of limitations would permit. Applying this rule to the date and the offense charged, it is entirely permissible for the government to introduce evidence of the commission of offenses under section 5209 as having been committed prior to the date of the amendment of September 26, 1918.

The discussion of the interesting questions involved in a proper consideration of the exceptions has drawn this opinion out to an unwarranted length. It might, perhaps, have sufficed to say in answer that

the defendants' propositions are untenable solely upon the authority of the Zarafonitis Case, supra.

The general and special exceptions will be overruled, and a formal order to that effect will be entered in due course.