## UNITED STATES *v.* AMBROSE.[*]

*(Circuit Court, S. D. Ohio.  June 6, 1881.)*

1. ESTOPPEL BY RECORD—RECOGNIZANCE AND ITS FORFEITURE—RECORD IMPORTING ABSOLUTE VERITY.

   The proceedings with reference to a recognizance and its forfeiture are proceedings of the court, and constitute part of the records of the court; and the record thereof imports such absolute verity that no one against whom it is producible can contradict it.

2. SAME—SAME—SAME—EVIDENCE CONTRADICTING RECORD.

   In a *scire facias*, upon a recognizance, testimony to contradict facts stated in the record of the forfeiture of the recognizance, *held*, incompetent.

*Scire facias* upon a Recognizance.  Trial before the court, without a jury.

*Channing Richards,* U. S. Att'y, for plaintiff.

*Hoadly, Johnson & Colston, contra.*

MATTHEWS, Circuit Justice.  This proceeding is a *scire facias* in the name of the United States against Harry T. Am-

*Reported by J. C. Harper, Esq., of the Cincinnati bar.

brose and Thomas Ambrose, upon a recognizance entered into by them in this court, in the sum of $5,000, conditioned for the appearance of Thomas Ambrose, from day to day, to answer to an indictment pending against him, and not depart the court without leave, at the April term, 1880, and alleging a breach of the condition. The answer denies the breach, and the replication perfects the issue. To sustain the issue on its part, the United States introduced and read a record of the court showing that on a certain day during that term the necessary steps for the purpose of working and declaring a forfeiture of the recognizance were taken. To that the defendant offered testimony to prove that the facts stated in that record, showing the forfeiture, were not true; that, in point of fact, Thomas Ambrose was not called as therein recited; and that, in point of fact, Harry T. Ambrose, his surety, was not called upon to produce his body, as therein declared, and the question is whether or not that testimony is competent. I think it is not.

The proceeding with reference to a recognizance is a proceeding of the court. The recognizance itself constitutes a part of the records of the court: it is a contract of record. The proceeding in the forfeiture of a recognizance is a proceeding of the court, and is a matter of record; and it seems to me that it is, as in other cases of records, a case where the record imports such absolute verity that no one against whom it is producible shall be permitted to aver against it.

In the case of *The King* v. *Carlile*, 2 B. & Ad. 262, which is fully cited in the note to the *Duchess of Kingston Case*, in Smith's Leading Cases, "the defendant had been convicted of a seditious libel, and brought a writ of error to the Queen's Bench, assigning for error in fact, that there was but one of the justices named in the commission present when the jury gave their verdict. On the record returned to the King's Bench (and which was made up in the ordinary way) it appeared that a sufficient number of justices were present, and the court held that it was not competent to the defendant to question the fact as stated."

In delivering the opinion, the court said that it was clear

upon the authorities that a party cannot be received to aver, as error in fact, a matter contrary to the record.

In 1 Inst. 260, Lord Coke says:

> "The rolls being the records or memorials of the judges of the courts of record, import in them such incontrollable credit and verity as they admit of no averment, plea, or proof to the contrary. And if such a record be alleged, and it be pleaded that there is no such record, it shall be tried only by itself; and the reason thereof is apparent, for otherwise (as our old authors say, and that truly) there should never be any end to controversies which would be inconvenient."

The rule is stated in Starkie on Evidence, 317, with a good deal of terseness, and makes the distinction, which is to be borne in mind, that there are two purposes for which a verdict or judgment may be offered in evidence: *First*, with a view to establish the mere fact that such a verdict was given or judgment pronounced, and those legal consequences which result from that fact; and, *second*, with a view to a collateral purpose,—that is, not to prove the mere fact that such a judgment has been pronounced, and so to let in all the necessary legal consequences of that judgment, but as a medium of proving some fact as found by the verdict, or upon the supposed existence of which the judgment is founded.

The author of the note in the *Duchess of Kingston Case*, in referring to that distinction, divided judgments into two kinds, viz., judgments *in rem* and judgments *in personam*, or judgments *inter partes*, and says:

> "With regard to both of these classes one observation may be made; that is, that for the mere purpose of proving the existence of a judgment the production of a record of either sort is conclusive upon all the world."

The particular question, in its application to recognizances, has more than once been decided, and especially in the case of *Calvin* v. *The State of Ohio*, 12 Ohio St. 60, where the facts of the case are not distinguishable from the facts in this case, and wherein the court, through Judge Peck, says:

> "The settled practice in these cases, which may be said to be the law of such judicial undertakings, required that Squires should appear in said court on the day named in the recognizance, and answer to the criminal charge specified therein, and that the defendants, his sureties, should have him then and there for that purpose; and that, if Squires was not so present or produced, the several parties to said recognizance were to be called

and required to comply with its obligation ; and also that, on a failure to comply, it would be the duty of the court before which it was acknowledged to declare it forfeited, and that the forfeiture so declared should forthwith be deemed a record of said court.

" Such being the law of this species of undertakings, how can it be said that the calling and forfeiture of such a recognizance is an *ex parte* proceeding in the sense alluded to by the counsel for the defendants ? They voluntarily appeared in open court, and became parties to an inchoate judicial proceeding, and were conversant, or, at least, cannot plead ignorance of the legal course prescribed for its fulfilment and its forfeiture. They, therefore, knew, or must be presumed to have known, when entering into that engagement, that, in case of a default, it would be the duty of the court before whom it was acknowledged, without · process or further notice, to enter against them a forfeiture of the entire penalty, which entry would have all the force and effect of a record of the court. It was *ex parte*, perhaps, but only so in the sense in which a judgment made by default, where a service of notice has been acknowledged, could · be so termed ; and no one would say that a judgment so rendered is not final and conclusive against the defendant, until reversed or set aside in due course of law.

" The record may be only evidence of the forfeiture, but it is, by the statute, evidence of a superior degree—*evidence by record*—and, on general principles, cannot be met and overthrown by testimony of an inferior grade, as was attempted in the case at bar."

And the opinion of the supreme court of the state of Ohio is sustained by citation of authorities from Iowa and New York to the same effect.

Now I am referred, on the other side, to two cases only : One in 9 Wall. 60, the case of *Reese* v. *The United States*, where all that was decided is that the contract of suretyship in a recognizance is·like·a contract of suretyship in all other cases in respect to this point: that in case the contract is altered in respect to the principal by the consent of the party to whom the recognizance is given, that that releases the surety.

The other case is that of *Griswold* v. *Stewart*, 4 Cow. 457. That was a *scire facias* against Stewart, and set forth a judgment of the court in favor of the plaintiff against Walton for $5,000 and costs, on the twenty-ninth of October, 1813; that execution thereof still remained to be made; that Walton was dead, and commanded the sheriff of Columbia county to warn the heirs and tenants of all the land in his bailiwick whereof Walton, or any person or persons in trust for him, was

seized on the twenty-ninth day of October, 1813, the day on which the judgment was entered, or at any time after, to show cause why the debt and costs should not be made of those lands and tenements. Stewart being warned as one of the tenants on the day of the rendition of the judgment, appeared and made the plea that on the day on which the judgment was entered Walton was dead, and that consequently the judgment was void by reason of the want of jurisdiction in the court over the person of Walton for the purpose of rendering the judgment. It was held that that plea was a good plea, because it did not contradict the record, but only undertook to avoid the effect of it by showing that the court had no jurisdiction to render the judgment. But it did not contradict the fact of the rendition of the judgment, or any of the transactions of the court which took place on that day, and I see nothing in that which is not consistent with the rule that is applied in the other case.

There will, therefore, be a judgment for the plaintiff for the amount of the recognizance.