## UNITED STATES v. FLETCHER et al.

(District Court, W. D. Texas, El Paso Division. February 8, 1922.)

1. Bail ⬅79(1)—Sureties held not entitled to relief from judgment of forfeiture.

   Sureties on a bail bond *held* not entitled to have set aside a final judgment against them, entered by default on their failure to appear and answer after service of scire facias on them, where no excuse was given for the default, and the only defense offered was that they signed the bond without reading or inquiry, supposing it to be a bond for a different defendant.

2. Bail ⬅84—No defense by surety that he signed the bond without reading.

   It is not a defense by a surety to an action on a bail bond that he signed it without reading or inquiring as to its contents, believing it to be a bond for a different person, where neither the court nor the prosecuting authorities had knowledge of such facts and the principal was released thereon.

3. Bail ⬅75—Bond for appearance "instanter" effective until case is disposed of.

   A bail bond conditioned that the defendant in a criminal case shall appear "instanter and from time to time thereafter to which the case may be continued," *held* to require his appearance from day to day and from term to term until his case is disposed of whether or not there was a formal continuance and to authorize forfeiture of the bond at any time for his nonappearance when called.

Proceeding on a bail bond by the United States against Norman E. Fletcher, principal, and J. M. Escajeda and L. Lopez, sureties. On motion by sureties to set aside judgments nisi and final. Denied.

Dale & Lattner, of El Paso, Tex. (L. A. Dale, of El Paso, Tex., of counsel), for movants.

H. R. Gamble, Sp. Asst. Atty. Gen., and N. J. Morrison, Asst. U. S. Atty., both of El Paso, Tex., for the United States.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SMITH, District Judge. There is a motion presented to me in this case to set aside judgments nisi and final on a bail bond in which the defendant Norman E. Fletcher is principal, and the defendants J. M. Escajeda and L. Lopez are sureties. Fletcher, the principal in the bond, failing to make his appearance in a criminal case for which the same was given, judgment nisi was taken on April 11, 1921, and after service of scire facias upon said sureties, and upon their failure to answer, judgment final by default was on October 4, 1921, rendered. The defendant Fletcher has not up to this time been rearrested, nor has he voluntarily appeared for trial, nor has any excuse been offered for his failure to do so. This motion was filed on November 5, 1921, during the same term of the court at which the final judgment was rendered.

[1] The setting aside of a judgment by default rests within the sound discretion of the court. It may not be properly done arbitrarily, but upon a showing of a state of facts which reasonably excused the defendants from answering the scire facias before judgment, and by further showing that the defendants have a meritorious defense, which may be presented if a new trial be granted. In my opinion neither of these conditions has been shown to exist. Absolutely no excuse whatever has been shown or attempted to be shown by the sureties for their failure to appear and present their defenses, if any they had, in an answer to the scire facias. It is therefore to be presumed that they had no excuse for not doing so.

The sureties do claim they have certain defenses against the forfeiture of the bond. They claim, first, that their signatures to the bond were obtained by fraud. Accepting as true the evidence most favorable to their contention, it is in effect that one Lauderback and the defendant Fletcher were jointly indicted in this court for a criminal offense and after arrest the wife of said Lauderback and one of the attorneys for him and Fletcher went to where defendant sureties were, and Mrs. Lauderback approached them separately with request that they become sureties on a bail bond for Lauderback. This was out of the hearing of the attorney, who remained in an automobile some distance away. Nothing was said about a bond for Fletcher, but both bonds were handed to them, and they signed both without question. Neither of the sureties read either bond, or requested that the bonds be read to them, or asked about the contents of them. Both sureties testify they would not have signed the Fletcher bond, had they known what it was. After the bonds were signed, they were carried to the United States commissioner, who knew nothing of the circumstances under which they were signed as above detailed, and he approved them. None of the officers of the court was apprised that the sureties claimed that their signatures were obtained by fraud, until such claim appeared in this motion to set aside the judgment by default.

[2] I do not think the facts recited constitute such fraud as rendered the Fletcher bond invalid. The rule of law governing this question is well and correctly stated in 6 Ruling Case Law, p. 624, as follows:

"The courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents, and who sustains no confidential relation to the other party can-

not avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it.   *   *   *   To permit a party when sued on a written contract, to admit that he signed it, but deny that it expresses the agreement he made, or to allow him to admit that he signed it, but did not read it, or know its stipulations, would absolutely destroy the value of all contracts.   The purpose of the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury which would be afforded, if parol evidence was admissible.   *   *   *   The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons, on the ground that, if such persons are unable to read, they are negligent if they fail to have the contract read to them.   If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents."

This text is supported by a long list of cited authorities, and also by the following:   Taylor v. Fleckenstein (C. C.) 30 Fed. 99; Lumley v. Wabash Ry. Co. (C. C.) 71 Fed. 21; Hazard v. Griswold (C. C.) 21 Fed. 178; Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203.

The defendant Escajeda testified he could read.   The defendant Lopez testified he could not read.   However, he could have had it read to him; but this he made no effort to do.   No misrepresentations were made to either of them by any one.   They were requested to sign a bond for Lauderback, and they did so.   At the same time a bond for Fletcher was handed to them, and they signed that also, without making any inquiry as to what it was, and without anything having been said to them as to what it was.   The transaction was not participated in nor instigated by any agent or officer of the government, and everything about the execution of the bond appearing to be regular, and the commissioner having accepted same on behalf of the government without any knowledge of any infirmity therein, if there was any, defendants are now estopped to question the validity of their execution of it.

There is another reason appearing from the evidence why these defendant sureties should not now be heard to deny the validity of the bond upon the ground that their signatures were obtained by fraud, and that is this:   Some time during the first week in April, and before default had been taken upon the Fletcher bond, these sureties having been informd that Fletcher was under arrest in Michigan, called at the district attorney's office and asked that an alias capias be issued for him, and the district attorney informed them that, as there had not yet been any forfeiture on the bond, an alias capias was not authorized. The sureties thereupon left without making any claim that there was any invalidity in the bond.   Had they made such claim, and advised him of their contention as to what they claimed the facts to be, the district attorney could have asked for an alias capias, and no doubt would have done so.

Another defense the defendant sureties contend they can on a trial of the case urge against a forfeiture of the bond is that they did not appear before the commissioner for the purpose of signing same.   No authority is cited to sustain this contention, and I am sure there is no such authority.·

[3] It is further contended that the forfeiture should be set aside because it does not appear from the judgment nisi that a forfeiture of the bond was authorized, and because it does not appear therefrom that the conditions of said bond had not been complied with by the principal, Fletcher, and because it does not appear therefrom that there had been a breach of the conditions of said bond; and in support of this contention it is pointed out that the condition of the bond as recited therein is that the principal, Fletcher, should appear before this court "instanter and from time to time thereafter to which the case may be continued," whereas the judgment nisi only recited as cause for forfeiture that the defendant Fletcher failed to appear for trial the day his case was called for trial, viz. April 11, 1921. The date of the bond is October 16, 1920. Defendant sureties contend that, according to the conditions of the bond, same was not forfeitable except on the date thereof, or at some time to which the case might be continued, and that, as the judgment nisi did not recite that Fletcher failed to appear before the court instanter, nor that the case had been continued to and set for the 11th day of April, 1921, and that he failed to appear upon that date, no breach of the conditions of the bond was recited, and no forfeiture was authorized.

In determining the requisites of a bail bond in this court, and in construing such bond, we must look to the statutes of this state, and to decisions of the courts of this state construing same. Article 321, Vernon's Texas Code of Criminal Procedure, in prescribing the requisites of a bail bond, provides, among other things, that the bond shall state the time when the accused binds himself to appear. Article 323, Id., provides that—

A "bail bond, entered into by a defendant, and which binds him to appear at a particular term of the district court, shall be construed to bind him and his sureties for his attendance upon the court from term to term, and from day to day, until discharged from further liability thereon, according to law."

A bail bond, which requires the defendant to appear instanter, is sufficient as to time. Fentress v. State, 16 Tex. App. 79. The legal construction of such a bond would be that the defendant is required to appear before the court named within the next 24 hours, or within such time as would be reasonable under all the circumstances of the case, and article 323, above referred to, which is to be taken and construed in connection with the bond, would bind the defendant and his sureties for his attendance upon the court from term to term and from day to day, etc.

The condition of the bond in the instant case, as to the time when the defendant was to appear, in my opinion is in legal effect identical with the requirements of the statute. It requires the defendant to appear instanter and from time to time thereafter "to which the case may be continued." There was no order of court continuing the case; and so long as no such order was made the continuance was by operation of law from term to term and day to day till discharged. In other words, the provisions of the statute and the terms of the bond mean the same thing, and it was proper to enter the judgment nisi forfeiting the bond at the time it was entered, and the judgment nisi is not subject to the objection made.

There is a further contention by the defendant sureties that the scire facias served upon them was insufficient to support the judgment by default. They say that same did not correctly describe the obligation sued on, in that it described the bond as containing the condition that the defendant Fletcher should appear before the court "instanter and there remain from day to day and from term to term until discharged by proper authority," whereas the bond sued on did not contain such condition, but provided the condition only that defendant should appear "instanter and from time to time thereafter to which the case may be continued." This contention has been disposed of by what has already been said. As the two conditions are identically the same in substance and legal effect, it is immaterial that different verbiage was used in expressing them, and there was no misdescription of the bond in the scire facias.

From what has been said, it follows that I am of the opinion that, as the defendants have shown no excuse for their failure to answer and thus prevent final judgment against them, and as they have failed to show they have a meritorious defense which they could present on a trial of the case, it would be an abuse of judicial discretion to set aside the judgment by default.

The motion is overruled.