## NATIONAL SURETY CO. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit. October 29, 1928.

Nos. 5496–5498, 5539, 5540.

No. 5496.

No. 5497.

No. 5498.

No. 5540.

No. 5539.

Caldwell & Lycette, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Paul D. Coles, David Spalding, and Tom E. De Wolfe, Asst. U. S. Attys., all of Seattle, Wash.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

No. 5496.

HUNT, Circuit Judge (after stating the facts as above). ■ Plaintiff's general demurrer struck at the whole answer. Therefore, when the court sustained it, defendant, by standing upon its answer, could offer no evidence, and it made no attempt to do so. But the court went ahead, and after permitting plaintiff to introduce the bond in evidence, and after stating that the court took notice of the former journal entry of forfeiture, rendered judgment against the defendant. With the case in that situation, the question for decision by this court is whether the averments of the answer presented a defense to the writ. Hollister v. United States (C. C. A. 8) 145 F. 773; Heid v. Ebner (C. C. A.) 133 F. 156.

■ We are of opinion that whether there was any judgment and order of the District Court discharging the writ of habeas corpus and ordering Unverzagt's removal to another federal court was put in issue by the denials of the answer. Counsel for the government concede that "apparently no final order was entered," but point out that such an order is to be found in the order of the District Court denying a motion for a new trial, wherein the court cited an entry made in the

clerk's docket, dated May 7, as set forth in the statement of facts preceding this opinion. But in the light of the averments of the answer the plaintiff was obliged to establish that it could maintain the writ, a burden which it could not sustain, unless it put in evidence the record showing default judgment and order. 6 C. J. 1071; 35 Cyc. 1158; Hunt v. United States (C. C. A.) 61 F. 795; Hollister v. United States, supra. The records which the court referred to in the decision upon the motion for a new trial were not before the court upon the trial, and therefore could not be resorted to, to supply evidence required on the trial. It may safely be said that generally a court will not take judicial notice of proceedings in specific prior litigation in the same court, and that proceedings by scire facias upon a forfeited recognizance being a civil action, to which defendant may plead nul tiel record, the original record should be produced. United States v. Ambrose (C. C.) 7 F. 555; Burk's Extr. v. Tregg's Ex'r, 2 Wash. (2 Va.) 215; Alexander v. Foreman, 7 Ark. 252; Adams et al. v. State, 11 Ark. 466; Hagar v. Cochran, 66 Md. 253, 7 A. 462; Moody v. Muscogee Mfg. Co., 134 Ga. 721, 68 S. E. 604, 20 Ann. Cas. 308. We conclude that plaintiff's demurrer should have been overruled.

We now indicate our views as a guide in possible future trial. If, upon the introduction of the record and the inspection thereof, it should appear that on May 13, 1925, forfeiture against Unverzagt was made, then, as the District Court had authority to take the recognizance, the short entry made by the clerk would be conclusive evidence that, as a step before forfeiture, the principal was called and did not appear. United States v. Ambrose, supra; Fox v. Commonwealth, *81 Pa. 511; Commonwealth v. Basendorf, 153 Pa. 459, 25 A. 779; Peacock v. People, 83 Ill. 331.

In the Basendorf Case, in scire facias on an alleged forfeited recognizance the defense set up, among other matters, was that there was no jurisdiction in the tribunal which took the recognizance on which scire facias issued; that defendant signed the recognizance on condition that another defendant should sign it; that no offense was stated under the law of Pennsylvania in the information in the case. The entry in the docket of the magistrate was: "Recognizance forfeited May 5, 1891." It was held that the judgment against the sureties was right; that the defense stated was insufficient; that the entry as recited was conclusive; that the

defendant and the bail were called and did not appear.

The surety company contends that no appeal was allowable, because there was no final judgment or order in the matter wherein Unverzagt appealed to the Circuit Court of Appeals. Unverzagt v. United States, 5 F. (2d) 494.

It is not to be disputed that ordinarily, if appeal is not permissible, action cannot be maintained on an appeal bond. Should an appeal on a bail bond be dismissed by the Circuit Court of Appeals before it takes jurisdiction, action cannot properly be had on the appeal bond because of lack of consideration for the bond; but where an appeal is taken, even though improperly taken and improperly allowed, and the court takes jurisdiction, the bond on appeal is valid, and action upon the same will lie for the reason that there is a consideration for the bond, and the principal has been released in consideration of the execution of the bail bond. In Unverzagt's Case, the Circuit Court of Appeals took jurisdiction of the appeal; therefore action will lie on the appeal bond because of the failure of Unverzagt to obey the orders of the District Court. In other words, an estoppel arises against those who obtained the contemplated advantages pending the disposition of the appeal, and they are estopped from denying their liability when the bond has served the purpose for which it was given. That rule seems wholly just where all the parties considered the order of the court discharging the writ and order requiring defendant's removal as a final order. 4 C. J. 1269.

It can be fairly gathered that a defense is stated in the first affirmative answer. While the averments thereof are lacking in definiteness, yet it is deducible that the second arrest of Unverzagt was upon the same charge upon which he had first been arrested. If we are right in so construing the averments, the surety could plead that a rearrest of the defendant on the same charge on which he was originally arrested released the bail and discharged the surety on the first bond. 3 R. C. L. § 63; 6 C. J. 1027; United States v. Atwill, 24 Fed. Cas. No. 14,475, page 887.

The second affirmative defense, alleging that the writ against this surety was issued by mistake, is without merit. Plaintiff has stated a cause of action against this defendant, and must stand or fall on its asserted rights in respect thereto, regardless

of defendant's conception that plaintiff intended to sue upon a different contract.

Referring to the third affirmative defense, to the effect that no order of removal was issued, we reiterate that the court, in order to proceed in an orderly manner, should have before it the record showing that there was an order of removal.

The fourth affirmative defense, alleging that the principal did not fail to abide by any order of the court previously entered, merely states a conclusion, and, in the absence of fact pleaded in support of the averment, is no ground for defense.

The judgment is reversed, and the cause is remanded, with directions to overrule the demurrer, and proceed in accordance with the views herein expressed.

Reversed and remanded.

### No. 5497.

In this action the writ of scire facias alleged that on February 5, 1925, a recognizance was given by Larry Burns and the surety company, appellant, conditioned for the appearance of Burns before the United States District Court for the Western District of Washington, at Seattle, during the May, 1925, term, and from time to time and term to term thereafter, to answer a charge "exhibited against him, and not to depart out of the jurisdiction of the court without leave"; that at a proper term of said court thereafter, in September, 1925, Burns was called, but made default, whereupon, on motion, it was considered by the court that for the default mentioned Burns, as principal, and the surety company, as surety, forfeit and pay to the United States $750 according to the tenor and effect of the recognizance, unless they show sufficient cause to the contrary. There was the usual command to appear and show cause why the judgment nisi should not be made absolute.

The surety company answered, by denying that the bond was conditioned as alleged; denied that Burns was called at a proper time; denied that he defaulted, and pleaded (1) that no charge was filed against Burns until May 15, 1925, which was three months after the date on which he was bound by the bond to appear, and was in the next term after the term in which he was by his bond bound to appear; (2) that the charge for which Burns was bound to appear was that on or about November 21, 1924, he violated the National Prohibition Act (27 USCA), while the charge filed against him was that the violations had been committed on October 4, October 16, October 24, October 31, and November 8; (3) that on May 26, 1925, Burns appeared in the District Court and pleaded guilty to two of the counts charged, and thereby fulfilled the condition of the bond; (4) that the bond required Burns' appearance in the November, 1924, term, and not in the May, 1925, term of court. At the trial before the court, plaintiff offered the bond in evidence.

The bill of exceptions recites that the government was allowed to amend the writ, changing "November term" to "May term"; that the bond was in the commissioner's transcript, and that it was stipulated that the bond was filed on the date it bears and had not been paid. It is also recited that the government offered in evidence certain lines from the docket of the clerk, showing that on May 26, 1925, Burns revised his plea of guilty to counts 1 and 2, and that the other counts were dismissed; that on May 26 an order was made setting June 1, 1925, for judgment and sentence; that the matter was continued several times until September 8; that on September 8 continuance was denied, and bail forfeited nisi, and bench warrant issued for Burns; that designated records containing the evidence and entries above referred to were offered without objection and admitted; that the bond was admitted and the government rested; that defendant moved for a nonsuit, whereupon the court stated that it had not been shown that the defendant had been called; that thereupon the plaintiff offered a certain page of the journal entries of the District Court under date September 8, 1925, in the case of United States v. Burns, showing order as follows: "Now on this 8th day of September, 1925, the above defendant is called for sentence and, not responding, is called three times in the corridor of the court; not responding, bail is forfeited nisi and bench warrant issued;" that the government then rested; that defendant renewed its motion for nonsuit, which motion was denied; that defendant thereupon offered additional evidence to the effect that the criminal docket showed that the information was filed May 5, 1925; that the criminal complaint was then offered in evidence and admitted; that defendant then rested. Thereafter the court entered judgment for plaintiff and the forfeiture was made absolute. Exception was allowed.

This case is at once distinguishable from the one just decided, for here the record was formally introduced in evidence upon the trial. We cannot sustain the position taken by appellant that, as the bond is a joint and several obligation, it was neces-

sary that the surety should have been called to produce defendant. The weight of authority is that, where there has been default on the part of the principal, he is the only one who need be called, and that a forfeiture of the recognizance may be declared without calling the sureties, and without previous notice to them, unless such notice is required by statute. 6 C. J. 1046; Southern Surety Co. v. United States (C. C. A.) 23 F.(2d) 55.

We must also overrule the contention that the plaintiff failed to prove the judgment nisi as alleged. Appellant's argument is that the entry in the clerk's docket was insufficient, in that it did not mention against whom the judgment was rendered, nor did it state the amount thereof. In People v. Tidmarsh, 113 Ill. App. 153, the order of the court was that recognizance "herein be and is now forfeited." It was held to be a sufficient formal declaration of forfeiture. In Banta v. People, 53 Ill. 434, where the principal failed to appear, the order was that the recognizance be thereby declared forfeited, and that default of defendant and his sureties be entered of record, and that scire facias issue against defendant and his sureties to appear and show cause, etc. The court sustained the order as sufficient. Remington's Comp. St. Wash. § 777; State v. Eyermann, 172 Mo. 294, 72 S. W. 539.

A further contention is that, Burns, having appeared and pleaded guilty to counts 1 and 2 of the information, and the other counts having been dismissed, and judgment and sentence on counts 1 and 2 having been continued from time to time until September 8, at which time Burns failed to appear for sentence, the charges contained in the first two counts were not covered by the bond. It is to be noted that the bond was conditioned to answer the charge of having "on or about the 21st day of November, A. D. 1924, * * * in violation of section —— of the National Prohibition Act, Act of ———, * * * unlawfully, knowingly and willfully maintained a common nuisance," and having possessed and sold certain intoxicating liquor, etc. The information upon which Burns was arraigned contained seven counts charging him with sale of liquor on October 24, 1924, sale on October 16, 1924, sale on October 24, 1924, possession with intent to sell on October 31, 1924, prior conviction under the Prohibition Act, and sale on November 8, 1924; the maintenance of a nuisance from October 4 to November 8, 1924. The surety company says that inasmuch as Burns plead-

ed guilty to counts 1 and 2 and the other counts were dismissed on May 26, 1925, which was prior to forfeiture, that the government dismissed all charges alleged to have occurred after October 16; furthermore, that inasmuch as the bond was to answer an offense committed on November 21, 1924, the consequence is that on September 8, 1925, when the bond was forfeited there was no charge covered by the bond pending against Burns. But as the bail bond was introduced in evidence without objection, the surety company waived the variance between the date stated in the bond and the date erroneously stated in the information. It became immaterial. 6 C. J. 1002; Welborn v. People, 76 Ill. 516; People v. Richardson, 187 Ill. App. 634; Lewis v. State (Tex. Cr. App.) 39 S. W. 570; Blain v. State (Tex. Cr. App.) 31 S. W. 366.

It is next argued that the bond was discharged for failure to call Burns at any proper time; that the bond was a one-term instrument, and did not contain the "term to term" condition; that it required Burns to appear on the —— day of the November term to be begun and held on the 9th day of February, 1925, and from time to time thereafter to which the case might be continued, and that Burns was not called during the November, 1924, term, said to have been a different term and not covered by the bond.

It is accepted by counsel for both sides that the conditions of a bail bond given in the federal court are governed by the laws of the state in which the federal court is located. Reference is therefore appropriately made to section 1957 of Remington's Compiled Statutes of Washington, providing as follows: "The recognizance shall be conditioned in effect that the defendant will appear * * * to answer said charge whenever the same shall be prosecuted, and at all times, until discharged according to law, render himself amenable to the orders and process of the superior court, and if convicted, render himself in execution of the judgment." It is evident that there was a clerical error in specifying dates in the present case, but that does not operate to release the surety. The statute above quoted was correctly construed in United States v. Duke (D. C.) 5 F.(2d) 825, where Judge Neterer held that, in the contract between the government and the surety, the surety was under obligation to produce the defendant, not at any particular term of the court, but at all times until discharged according to law. United States v. Davenport (D. C.) 266 F. 427; United States v. Fletcher (D. C.) 279 F. 160;

United States v. Du Faur (C. C. A.) 187 F. 812.

Another contention of the appellant is that the bail was discharged because the information was not filed within 30 days after arrest of defendant, and that he was not brought to trial within 60 days after the information was filed. Section 2311 of the Compiled Statutes of Washington provides that, whenever a person has been held to answer any criminal charge, if an indictment or information is not filed against him within 30 days, the court shall order the prosecution dismissed, unless good cause to the contrary is shown. Section 2312 provides that, if a defendant indicted or informed against for an offense, whose trial has not been postponed upon his own application, is not brought to trial within 60 days after the indictment is found, or the information is filed, the court shall order it to be dismissed, unless good cause to the contrary is shown.

 We are disposed to regard the state statutes referred to as not restrictive upon the enforcement of a recognizance in the federal court. United States v. Insley (C. C. A. 8) 54 F. 223; United States v. Zarafonitis (C. C. A.) 150 F. 97, 10 Ann. Cas. 290. However, that question need not be inquired into at this time, for the reason that in the case against Burns the information was not dismissed; nor does it appear that there ever was a motion for the dismissal thereof for want of prosecution; nor that Burns ever was dismissed from the information filed against him before or after forfeiture of his bail bond for his appearance at the time of sentence. Rem. Comp. St. Wash. § 2313; United States v. Dunbar (C. C. A.) 83 F. 151; United States v. Davenport, supra.

The foregoing views dispose of the more important points, and lead to the conclusion that the judgment should be affirmed.

## No. 5498.

The writ of scire facias alleges that on February 24, 1925, recognizance was executed by Eugene Rodgers and the National Surety Company; that the bond was conditioned for the appearance of Rodgers before the United States District Court at Seattle "during the May, 1926, term and from time to time, and term to term, thereafter," to answer a charge exhibited against him; that the bond was filed; that on January 3, 1927, at a term of court, Rodgers, being called, came not, but made default; that thereupon it was considered by the court that Rodgers, as principal, and the surety company, as surety, forfeit and pay to the United States

the sum of $750, according to the tenor of the bond, unless they show cause to the contrary.

The surety company answered, admitting that Rodgers and the surety company executed a surety bond on February 24, 1925, for $750, but denied that it was conditioned for the appearance of Rodgers before the District Court during the May, 1926, term or at any other time. For affirmative defenses the surety company alleged that Rodgers complied with the terms of the bond of February 24, 1925; that the bond of February 24, 1925 was given when the United States commissioner bound Rodgers over to appear before such commissioner; that the commissioner required Rodgers to file a final bond for appearance before the United States District Court; that Rodgers filed such further surety bond in the sum of $1,500 on February 27, 1927, and was released thereon, and that thereby the bond of February 24 was released; that the final bond of February 27 was not conditioned for Rodgers' appearance during the May, 1926, term of the District Court, and from time to time, and term to term, as set forth in the writ; that Rodgers was not called on January 3, 1927, or ever, nor did he default under the final bond.

Another affirmative defense alleged that the bond was void, for the reason that no definite date was set for appearance of Rodgers.

The fourth affirmative defense was that the bond executed on February 27, 1925, was conditioned for the appearance of defendant on the ―――― day of the ―――― term, to be held at Seattle on the ―――― day of "the present term, 1925," and from time to time and term to term thereafter, to which the case might be continued; that Rodgers was not called to appear during the "said present term," nor at any time "during said present term," nor was he called during the following term, or at any term, until January 3, 1927.

The fifth affirmative defense was that, when the bond was executed by the surety company, it provided for the appearance of Rodgers on the ―――― day of the ―――― term, and from time to time thereafter; that afterward, and without the knowledge or consent of the surety company, the bond was materially altered by the addition of the words "present term," and the words "term to term," and that by reason thereof the bond became null and void.

The sixth affirmative defense was that the bond was null and void, because on its face Rodgers was required "then and there to answer the charge of having, on or about the

——— day of ———, A. D. 192—, in violation of section ——— of the ——— act (act of ———) Criminal Code," violated the National Prohibition Act; that by the terms of the bond Rodgers was not bound to answer any charge under the laws of the United States; that, by reason of the failure of the bond to provide for his answering for a definite charge, the bond became null and void.

For a seventh affirmative defense, it was alleged that, if the condition of the bond was that Rodgers should answer any charge, then he was bound only to answer a single charge; that the United States on September 30, 1926, filed an information against him in two counts, charging him with two violations of the National Prohibition Act, one possession of intoxicating liquor on the 21st of February, 1925, and the other with maintaining a nuisance on February 21, 1925.

The eighth defense alleged that no notice was given to the surety company to produce Rodgers prior to the date of forfeiture; that the forfeiture was premature, in that the action was set for trial on February 8, 1927, and then continued to March 15, 1927, which dates are subsequent to the date of the alleged forfeiture of the bond.

The case was tried to the court. The bill of exceptions shows that counsel for the government offered the bond in evidence. Objection was made on the ground that the writ was based on the bond executed on February 24, 1925; that thereupon the government was granted leave to amend the writ, by changing the date alleged from the 24th to the 27th of February, 1925. Defendant thereupon, by leave of court, filed an amended answer, and the bond was received as evidence. Exceptions were saved. The surety company admitted execution of the bond and that it was filed February 28, 1925. Counsel for the government then read into the record the clerk's docket as follows: "Line 1. Sept. 30, 1926; filed information. Line 2. Jan. 3, 1927, enter order forfeiting bail and for bench warrant." The government rested. Motion for nonsuit was denied. Thereupon the surety company offered in evidence certain lines of the clerk's docket as follows: "Jan. 3, 1927, enter order for trial, Feb. 8, 1927. Feb. 8, 1927, entered order trial March 8, 1927. March 9, 1927, entered order trial March 15 at foot of calendar. March 15, 1927, entered order cause over term." These entries were all admitted, and by stipulation the entry that defendant was called on January 3, 1927, was the only time he was called, if he was called at all. Thereupon an attorney for the surety company testified in behalf of the company that the bond issued originally did not have the written words "present term" or "term to term"; that no authority was given by the surety company to add those words, which appear in the handwriting of the United States commissioner. The information against Rodgers was then filed as an exhibit in defendant's behalf. Judgment was thereupon rendered for the plaintiff, and the forfeiture was made absolute.

We do not regard the unauthorized alteration sufficient to render the bond invalid, for the reason that the statute of Washington, which is to be read with the bond, required the defendant to appear at all times, not during that term, but at all times during subsequent terms. United States v. Fletcher (D. C.) 279 F. 163; United States v. Duke (D. C.) 5 F.(2d) 825. The alterations in no material way varied or changed the legal effect of the contract. 6 C. J. 1026.

Nor can we hold that the bond is void, because no time was stated in the original bond for the appearance of Rodgers, other than that he be present at the then present term, 1925, and from time to time thereafter. By force of the state statute he was obliged to appear at all times. Rem. Comp. St. Wash. § 1957; People v. Richardson, 187 Ill. App. 634.

Nor is there substance in the contention that the information charges a different crime from that set forth in the bond. The offenses charged in the information and those set forth in the bond are all violations of the National Prohibition Act, and in substance are the same in both the information and the bond. 6 C. J. 1002; Wells v. Terrell, 121 Ga. 368, 49 S. E. 319.

We find no ground for reversal of the judgment.

Affirmed.

### No. 5539.

The writ alleges that on August 6, 1925, Hikida and the surety company executed a recognizance, conditioned for the appearance of Hikida before the District Court during the November, 1925, term, and from time to time, and term to term, thereafter, to answer a charge exhibited against him; that in August the bond was filed; that on March 25, 1926, Hikida was called to answer the charge, but came not and made default; that it was considered by the court that for the default of Hikida and the surety company forfeit the amount of the bond in accordance with the terms thereof, unless they show cause to the contrary.

The answer denied the condition of the

bond as pleaded; denied that Hikida was called on March 25, 1926, or at any proper term of the District Court; denied default under the bond and set up affirmatively that the bond was conditioned for the appearance of Hikida on August 8, 1925; that no information was filed until December 10, 1925, or more than four months after the date stated in the bond, and at a different term; that the bond was conditioned for the appearance of Hikida on August 8, 1925, during the May, 1925, term; that he was not called at any time during the May, 1925, term.

Upon the trial the minutes of the court showed that the case against Hikida was set for trial March 23, 1926, and was continued to March 25, and that on March 25, 1926, order was made forfeiting the bail and directing issuance of the bench warrant. Plaintiff asked leave to amend the writ to conform to the proof as to dates. Defendant then moved for a nonsuit, which motion was denied. It was then stipulated that the information against Hikida was filed December 10, 1925. Both sides then rested, and judgment went in favor of plaintiff.

▮ The decisions cited in the cases preceding this sustain the proposition that the entries in the clerk's docket are sufficient evidence of record of forfeiture, and that, before entry of the forfeiture, defendant was duly called and failed to appear. Rem. Comp. St. Wash. §§ 777, 2235. Nor was it necessary to call the surety to produce the defendant under charge. Burrall v. People, 103 Ill. App. 81; 6 C. J. 1046; Southern Surety Co. v. United States (C. C. A.) 23 F.(2d) 55; State v. Eyermann, 172 Mo. 294, 72 S. W. 539.

▮ It is said that the bond proved was not the bond alleged in the writ; that the bond alleged was for the appearance of Hikida in the November, 1925, term, and from time to time, and term to term, thereafter; whereas, the bond introduced was for the appearance of Hikida from time to time, not term to term. Assuming, without conceding at all, that the variance was material, any advantage of the point that might have been taken by the surety company was waived by its failure to raise the question of variance when the bond was offered in evidence. People v. Richardson, supra; Lewis v. State (Tex. Cr. App.) 39 S. W. 570; Welborn v. People, 76 Ill. 516; 6 C. J. 1073.

▮ It is also said that the bond was discharged because of failure to call Hikida during the May, 1925, term, and for failure to file an information against him during the May, 1925, term. The bill of exceptions discloses that on behalf of the government request was made to amend the writ to conform to the proof, which showed a variance in the dates between the writ and the proof. Presumably the motion was granted. But, in any event, the variation, evidently a clerical error, could not affect the essentials of the surety's contract, which was entered into with knowledge of the statutes of the state, which expressly provide that a recognizance in a criminal case shall not fail for want of form, or for a minor defect. The recognizance entered into required that Hikida appear at the May term and answer the charge of having, about July 23, 1925, violated section —— of the National Prohibition Act, and at all times until discharged according to law render himself amenable to the orders and process of the court, and abide the judgment of the court.

The judgment is affirmed.

### No. 5540.

The writ alleges that on March 14, 1925, Michaelson and the surety company executed a bail bond conditioned for the appearance of the principal before the District Court during the November, 1925, term, and from time to time, and term to term, thereafter; that on March 19, 1925, the recognizance was filed, and that on January 11, 1926, at a proper term of the court, Michaelson came not, but made default; that thereupon it was considered by the court that Michaelson and the surety company forfeit and pay according to the effect of the bond. The command to show cause was in the usual form.

The surety company denied that the bond was conditioned as alleged, or that it was filed on March 19, 1925, or that Michaelson was called on the date specified, or any proper time under the bond, or that he defaulted. By affirmative allegation it alleged that no information was filed against Michaelson until December 12, 1925, or nine months after the date specified in the bond, and at a different term; that the bond was conditioned for the appearance of Michaelson on March 16, 1925, during the November, 1924, term, and from time to time, but that defendant was not called on said date, or during the November, 1924, term, nor during the May, 1925, term, and not until January 11, 1926.

After the bond was admitted in evidence without objection, it was agreed that the minutes of the clerk of the court showed that defendant was called to answer the charge on January 11, 1926. The government then rested. Motion for nonsuit was denied. De-

fendant then offered in evidence the information filed December 12, 1925, against Michaelson. Judgment for the government followed, and exceptions were duly taken.

■ We cannot agree with the contention of the appellant that there was no proof that the defendant was called and defaulted. The bill of exceptions shows that defendant was called to answer the charge on January 11, 1926, and that he was not present when the cause came on for trial on May 2, 1928. Under section 2235 of the Compiled Statutes of Washington, no action brought on any recognizance given in any criminal proceeding shall be defeated by reason of any neglect or omission to note or record the default of any principal or surety at the time when such default shall happen, or by reason of any defect in the form of the bond, if it sufficiently appear from the tenor thereof before what court the principal was bound to appear. Under that statute this action should not fail merely because of an omission to note the default of the principal at the time when the default happened.

■ We are asked to hold that the proceeding must fail on the ground that there was no proof that the bond was ever filed with the clerk of the District Court. The bond itself was executed before the United States commissioner on March 14, 1925, and on March 10, 1925, appears to have been filed in the District Court as part of the commissioner's transcript, or four days prior to the date of execution. Of course, there was a mistake on the part of the clerk. But, as it is evident that the bond was filed in the proper District Court, it is impossible to perceive how the fact that the file mark stamp was of a date before the date of the execution of the bond could prove that the bond was not filed at all. In Hollister v. United States (C. C. A.) 145 F. 783, the court held that the fact that the bond was acknowledged before a notary in 1894, but that the file mark on the bond showed the date 1904, did not constitute fatal variance. Jennings v. State, 13 Kan. 80.

■ As the surety made no objection to the bond (which stated that the defendant was charged with violations of the prohibition act) at the time of its introduction in evidence, any question of variance between its terms and the information filed against Michaelson was waived. Welborn v. People, 76 Ill. 516; Blain v. State (Tex. Cr. App.) 31 S. W. 366.

Other points are sufficiently covered by discussions in the preceding cases.

The judgment is affirmed.